# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY DASTRA,** | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO. 2:19-cv-04940-KSM** |
| **KYRIBA CORP.**, et al., | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                               **August 10, 2020**

Plaintiff Anthony Dastra sues his former employer, Defendant Kyriba Corporation and a former supervisor, Defendant Karthik Manimozhi, for race and national origin discrimination in violation of § 1981; age discrimination in violation of the Age Discrimination in Employment Act; and discrimination and retaliation in violation of Title VII and the Pennsylvania Human Relations Act. Defendants filed a motion to stay and compel arbitration. For the reasons discussed below, the Court grants Defendants' motion.

I.

Dastra began working for Kyriba in November 2016, and he worked for the company, under the supervision of Manimozhi, until August 2018 when he was terminated. (Doc. No. 1, ¶¶ 89–93.) (Doc. No. 1, ¶¶ 14, 89–93.) As part of Dastra's employment, Dastra and Kyriba had entered into an Arbitration Agreement (Doc. No. 9-2, p. 6, Ex. A; Doc. No. 13, p. 4) and a Proprietary Information and Invention Assignment Agreement (Doc. No. 9-2, p. 6, Ex. C; Doc. No. 13, p. 4).

Shortly after his termination, Dastra filed a charge with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") around August 13, 2018, claiming that he was discriminated against during his employment and was wrongfully terminated. (*Id.* at ¶ 11; Doc. No. 13, p. 5.)

On August 24, 2018, Kyriba filed a writ of summons in the Court of Common Pleas of Bucks County, Pennsylvania. (Doc. No. 1, ¶ 106; Doc. No. 9-2, Ex. D.) On October 9, 2018, the writ of summons was delivered to Dastra along with a letter that claimed, based on Kyriba's forensic analysis of Dastra's computer, that Dastra breached the Proprietary Information and Invention Assignment Agreement. (Doc. No. 1, ¶¶ 104, 106–08; Doc. No. 9-2, Exs. D, E.)

A little over one year later, on October 22, 2019, Dastra commenced the instant action in federal court. (Doc. No. 1.) On March 6, 2020, Defendants responded to Dastra's complaint by filing a motion to stay and compel arbitration. (Doc. No. 9.) Dastra subsequently filed his opposition. (Doc. No. 13.)

In moving to compel arbitration, Defendants argue that the Arbitration Agreement between Dastra and Defendants is a valid agreement that covers the scope of this dispute. (Doc. No. 9-2.) Defendants also contend that they did not waive their right to compel arbitration by filing the writ of summons in state court. (*Id.*) In opposing Defendants' motion, Dastra concedes that the Arbitration Agreement is valid, and he does not contest that his claims fall within the scope of the Agreement. (Doc. No. 13, p. 4.) Rather, Dastra argues that Defendants waived their right to compel arbitration because they previously filed the writ of summons against him in state court. (*E.g.*, *id.* at p. 3.)

II.

The Court, rather than the arbitrator, decides whether a party waived its right to compel arbitration. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007). "[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992). The requisite prejudice can be either "substantive prejudice to [plaintiff's] legal position" or "prejudice resulting from the unnecessary delay and expense incurred by the plaintiff[] as a result of the defendants' belated invocation of their right to arbitrate." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 209 (3d Cir. 2010). The party opposing arbitration bears the burden of demonstrating sufficient prejudice. *See, e.g.*, *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011).

The crux of Dastra's argument is that Defendants waived their right to compel arbitration because Kyriba filed a writ of summons in state court in August 2018. (Doc. No. 13, pp. 7–12.) But, as an initial matter, Kyriba's filing of a writ of summons does not, by itself, result in waiver. A writ of summons is not a pleading. *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995). The Third Circuit in *PaineWebber* opined, "[W]e hold that an action to compel arbitration under the Federal Arbitration Act accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute." *Id.* at 1066. The Third Circuit concluded that "filing a Pennsylvania Writ of Summons cannot constitute an unequivocal refusal to arbitrate because the Writ is silent as to the subject matter of the dispute." *Id.*; *see also Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 178, n.6 (Sup. Ct. Pa. 2018). Here, there is no

3

indication that Defendants ever filed a complaint.[1] (Doc. No. 9-2, Ex. E). As a result, Defendants did not automatically waive their right to compile arbitration merely by filing a writ of summons.

Moreover, because a writ of summons is not a pleading, the filing of a writ in state court is not the starting point in assessing any prejudice that resulted from Defendants' purported delay in seeking arbitration. *See Hoxworth*, 980 F.2d at 925 ("[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived . . . ."). Rather, the filing of Dastra's complaint in the instant action is the starting point in assessing prejudice. This conclusion is consistent with Third Circuit precedent. For example, in *PaineWebber*, the Third Circuit assessed prejudice from the date the *complaint* was filed, and disregarded the date the writ of summons was filed (which was six years prior). *PaineWebber*, 61 F.3d at 1069.[2] Additionally, because a writ of summons is not a pleading, nor is the opposing party required to respond to the writ, the filing of a writ cannot mark the commencement of the lawsuit for purposes of the arbitration waiver analysis. *See, e.g., id.* at 1068; *see also Nino*, 609 F.3d at 208 ("[W]aiver will normally be found only where the demand for arbitration came *long after the suit commenced* and when both parties

---

[1] Dastra argues, without providing support, that "Defendants previously filed and have actively litigated a separate lawsuit against Plaintiff in the Pennsylvania Court of Common Pleas." (Doc. No. 13, p. 9.) But, as noted throughout this memorandum, Dastra does not provide any evidence for this assertion. As there is no record of a complaint being filed, it is unclear how Defendants could have "actively litigated" a lawsuit that was never initiated. Further, Dastra fails to address the authority discussed above that indicates a writ of summons is not a pleading which commences a lawsuit.

[2] The Court acknowledges that in *PaineWebber*, unlike the case presently before this Court, the party seeking to compel arbitration was not the party who filed the writ of summons. However, this does not affect the analysis because, regardless of who files it, "a writ of summons is not a pleading." *Davis*, 192 A.3d at 178, n.6.

Moreover, in *PaineWebber*, shortly after the writ of summons was filed, the party that filed the writ of summons also provided the opposing party with "an unfiled 'draft complaint' alleging state law causes of action." 61 F.3d at 1065. "Settlement negotiations [then] ensued." *Id.* Nonetheless, the Third Circuit still concluded that the date the actual complaint was filed triggered the prejudice analysis. Therefore, to the extent that Dastra argues that litigation ensued because the writ of summons was delivered with a letter that alleged the breach of contract claim, we find it unavailing.

had engaged in extensive discovery." (emphasis added)). Indeed, Dastra admits that "formal litigation"[3] was not "initiate[d]" in state court. (Doc. No. 13, pp. 9–10.) Dastra's complaint in *this case* commenced the litigation, and as such, the prejudice analysis must be assessed from the time his complaint was filed.

Turning now to the substance of the prejudice analysis, Dastra, as the party opposing arbitration, must demonstrate sufficient prejudice. "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino*, 609 F.3d at 208. "[A] party waives the right to compel arbitration only in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Gray Holdco*, 654 F.3d at 451.

The issue of waiver is decided on a case-by-case basis, and the Court considers six nonexclusive factors in determining whether there is sufficient prejudice to support a finding of waiver: "(1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to

---

[3] Dastra fails to define or distinguish "formal" litigation from "informal" litigation. In his opposition brief, Dastra alleges that Defendants filed a state court complaint (Doc. No. 13, p. 11) and that Defendants "took a[n] . . . active role in aggressively pursuing separate litigation." (*Id.* at p. 8). But Dastra provides no evidence for these allegations, which directly contradict Dastra's admission that "formal litigation" was *not* initiated. (*Id.* at pp. 9–10.)

enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery." *Gray Holdco*, 654 F.3d at 451.

We will address each factor in turn.[4]

    *i.*    *Timeliness*

Dastra filed his complaint in federal court on October 22, 2019 (Doc. No. 1) and served it on Defendants on January 6, 2020. (Doc. No. 2.) Dastra and Defendants then stipulated that Defendants had until March 6 to respond to the complaint. (Doc. No. 3.) On March 6, Defendants filed their motion to compel arbitration. (Doc. No. 9.) Prior to filing the motion, Defendants had notified Dastra that they intended to demand arbitration. (Doc. No. 9-2, Ex. F.) Therefore, we find that Defendants' motion was timely, and this factor weighs against a finding of prejudice and waiver.

---

[4] Even if the Court were to consider Defendants' filing of the writ of summons in state court as the starting point for the prejudice analysis (which it is not), Dastra has not met his burden of showing the requisite prejudice for us to find waiver. There is no evidence that Dastra is in a weaker legal position due to any purported delay after Defendants filed the writ of summons. The EEOC did not even issue Dastra's Right to Sue letter until July 17, 2019, so the August 2018 writ of summons cannot be said to have delayed Dastra's remedies. Nor does Dastra show that he spent significant time or expense in connection with Defendants' filing of the writ of summons. For example, Dastra does not assert that he engaged in any discovery due to the writ of summons, nor does he claim that he hired an attorney because of the writ. In fact, *before* Defendants filed the writ of summons, Dastra already had an attorney to litigate the disputes arising from his employment. (*See* Doc. No. 13-3 (a letter from Dastra's counsel informing Defendants that counsel was representing Dastra in the then-pending EEOC and PHRC discrimination charges); Doc. No. 13, p. 5 (stating that the EEOC and PHRC charges were filed "on or around August 13, 2018"); Doc. No. 9-2, Ex. E (showing that Defendants did not file the writ of summons until August 24, 2018).) Ultimately, Dastra has not shown that the writ of summons caused the requisite level of prejudice necessary for us to find that Defendants waived their right to compel arbitration. *See, e.g.*, *Nino*, 609 F.3d at 208 ("Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery."); *cf. Zimmer v. CooperNeff Advisors*, 523 F.3d 224, 232–33 (3d Cir. 2008) (opining that the initiation of litigation, by itself, is not sufficient to find that a party waived its right to compel arbitration).

### ii. *Extent to Which Defendants Contested the Merits of Dastra's Claims*

While Dastra appears to argue that the filing of a writ of summons in state court should equate to significant litigation activity and support a finding of prejudice and waiver in this case, we do not agree. Dastra fails to provide any support or evidence for his assertions that Defendants actively and aggressively litigated the state case. (Doc. No. 13, pp. 8, 9, 12.) Moreover, Dastra argues, in part, that he was de facto prevented from taking certain actions in the state court proceeding, which prevented the writ of summons from becoming a "formal litigation." (*Id.* at pp. 9–10.) To the extent Dastra contends that this prejudiced him, the Court is not convinced. The question at issue here is whether Defendants' purported delay in pursuing arbitration prejudices Dastra *in the case before this Court*, not the state court proceeding. Thus, while Dastra may have felt restricted in his options in the state court proceeding, that is immaterial to the current analysis here.

Dastra bears the burden of showing prejudice, and his reliance on unsupported assertions, without more, does not suffice. We do not find that the filing of a writ of summons in state court constitutes significant litigation conduct. This factor weighs against a finding of prejudice.

### iii. *Notice to Dastra of Intent to Arbitrate*

At least two weeks before Defendants moved to compel, Defendants informed Dastra that they intended to pursue arbitration. (Doc. No. 9-2, Ex. F.) Thus, Dastra was aware of Defendants' intent to move to compel arbitration since the early stages of this case, including before Defendants made any substantive filings. This factor weighs against a finding of prejudice and waiver.

### iv. *The Extent of Non-Merits Motion Practice*

Defendants have not filed any motions other than the motion to compel arbitration. This factor weighs against a finding of prejudice and waiver.

*v.     Defendants' Acquiescence to the Court's Pretrial Orders*

Before Defendants filed their motion to compel arbitration, the Court had not entered any pretrial orders. The first pretrial order was entered on March 10, four days *after* Defendants filed their motion. (Doc. No. 10.) As such, although Defendants participated in the pretrial conference on March 25 (Doc. Nos. 10, 14), during which they emphasized that their motion to compel arbitration was pending, there is no basis to find that this required participation should result in a finding of prejudice and waiver. *See, e.g.*, *Nino*, 609 F.3d at 212–13 (explaining that a party does not act inconsistent with its intent to arbitrate when it complies with the Court's orders that occur *after* the motion to compel arbitration was filed). Additionally, on March 13—before the Court held the pretrial conference—Defendants requested that the pretrial conference and its "attendant submissions" be postponed until after this motion was resolved. (Doc. No. 11.) While the Court ultimately rejected this request and held the pretrial conference as scheduled, Defendants' actions suggest an attempt to limit all discovery until this motion was resolved. Such actions are consistent with a finding of non-waiver.

*vi.    The Extent to Which Both Parties Engaged in Discovery*

Dastra has not shown that any extensive discovery occurred in this case.[5] Indeed, the record suggests that the parties have engaged in minimal, if any, discovery. On May 8, at the parties' request, the Court stayed discovery in this case pending resolution of this motion. (Doc. No. 18). Thus, the Court finds that this factor weighs against a finding of prejudice and waiver.

Accordingly, we find that all six factors support the conclusion that Dastra has not suffered sufficient prejudice and thus Defendants did not waive their right to compel arbitration.

---

[5] Further, Dastra has not shown that the previous filing of a writ of summons in state court resulted in any litigation activity, including discovery.

8

III.

Finally, the Court addresses the specific arguments Dastra raises. While Dastra lists the six factors discussed above at the beginning of his argument (Doc. No. 13, p. 7), he then proceeds to ignore them. While arguing that Defendants waived their right to compel arbitration by filing the writ of summons[6]—an argument we rejected above—Dastra fails to adequately address the "touchstone" of the waiver issue: that he is prejudiced in *this* case before *this* Court due to Defendants' actions. Rather than showing how he was prejudiced, Dastra relies on bombast, accusations, and conclusory assertions. Dastra faults Defendants for not reaching out to his counsel before or after filing the writ of summons (Doc. No. 13, p. 9), yet Dastra fails to explain how this is relevant or required. Dastra further accuses Defendants of "trying to have its cake and eat it too," and "bully[ing] and intimidat[ing]" him. (*Id.* at p. 10.) Dastra concludes by claiming that ruling in Defendants' favor would be a "gross injustice that would prejudice Plaintiff." (*Id.*) While certainly strong language, these unsupported accusations and conclusions are insufficient for Dastra to meet his burden of demonstrating prejudice to support a finding of waiver.

Likewise, we are not persuaded by the case law Dastra cites. Dastra primarily relies on *Zimmer* and *SuperMedia*. (Doc. No. 13, pp. 8, 11.) Dastra relies on *Zimmer* because "the court took substantial note of the fact that the defendant seeking arbitration had been the party to initiate court proceedings." (*Id.* at p. 8.) *Zimmer*, however, is materially distinguishable from the case before this Court. In *Zimmer*, the party seeking to compel arbitration had previously filed a state court complaint under six legal theories. *Zimmer*, 523 F.3d at 227. The state court case resulted in

---

[6] Dastra does not explain or discuss why the Court should consider Defendants' filing of the writ of summons as the starting point for the prejudice analysis. Dastra asserts, without providing any support or evidence, that Defendants are continuing to actively and aggressively litigate the state case (Doc. No. 13, pp. 8, 9, 12), despite the record showing otherwise (Doc. No. 9-2, Ex. E). Again, Dastra cannot satisfy his burden of showing prejudice by relying solely on unsupported assertions.

9

at least three depositions being taken. *Id.* The *Zimmer* court found such actions to be relevant in determining whether that party had waived their right to compel arbitration in the subsequent federal case. *Id.* at 232–33. In contrast, here, the record does not show that Defendants filed a state court complaint; instead, they filed only a writ of summons, which is not a pleading. Further, unlike in *Zimmer*, Dastra does not show that any discovery occurred in the state court proceeding. *Cf. Nino*, 609 F.3d at 927 (explaining that the prejudice analysis is based, in part, on ensuring that the party opposing arbitration is not "required to duplicate its efforts, to at least some degree, if the case were now to proceed in the arbitral forum" (internal quotations omitted)). Accordingly, we find that Dastra's reliance on *Zimmer* is misplaced.

Dastra's reliance on *SuperMedia* is similarly unpersuasive. (Doc. No. 13, p. 11.) In *SuperMedia*, the court found it relevant that the party seeking to compel arbitration had previously filed a third-party complaint against the opposing party. *SuperMedia v. Affordable Elec., Inc.*, 565 F. App'x 144, 148 (3d Cir. 2014). The court held that this action weighed in favor of waiver. *Id.* (noting that the party "elected to engage in litigation on the merits by filing a third-party complaint . . . . prior to filing his motion to compel arbitration"). Conversely, in this case before this Court, Defendants did not "elect[] to engage in litigation on the merits by filing a . . . complaint." *SuperMedia* is thus inapposite.

For these reasons, we find that Dastra has failed to meet his burden in demonstrating sufficient prejudice.[7]

---

[7] Dastra also appears to argue that Defendants' motion should be denied because there are "genuine issue[s] of fact concerning the agreement to arbitrate." (Doc. No. 13, pp. 5–6.) We find this argument to be meritless. Dastra simply cites general case law concerning the standards of review a court considers in deciding a motion to compel arbitration. After citing this general case law—most of which is irrelevant to this motion—Dastra concludes that "there are clearly more than sufficient disputes regarding the validity and applicability of the arbitration agreement . . . to allow this Court to reject Defendants' Motion." (*Id.* at p. 6.) But not only does Dastra fail to provide even a scintilla of support for this conclusion, Dastra's own concessions contradict this conclusion. (*E.g., id.* at p. 4 ("Plaintiff does not dispute the fact that the

IV.

Dastra fails to show he suffered the requisite prejudice to find that Defendants waived their right to compel arbitration. Moreover, Dastra does not dispute that the Arbitration Agreement is valid and covers the scope of this action. Accordingly, the Court grants Defendants' motion to compel arbitration and stay proceedings. *See* 9 U.S.C. §§ 3–4.

An appropriate order follows.

---

agreement is a valid arbitration agreement.").) Indeed, the inclusion of this purported "argument" in Dastra's opposition, combined with the reference to "Plaintiff Benjamin" in Dastra's conclusion paragraph (*Id.* at p. 12), makes us wonder if this is a case of unchecked copying and pasting from a prior brief gone awry.